## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMOFI MASTER LDC AND<br>CAMHZN MASTER, LDC,<br><br>       Plaintiffs,<br><br>       v.<br><br>U.S. COAL CORP., EAST COAST MINER, LLC,<br>JAD COAL COMPANY, INC.<br><br>       Defendants.<br><br>_____<br><br>U.S. COAL CORP. and JAD COAL COMPANY,<br>INC.,<br><br>       Counterclaim Plaintiffs,<br><br>       v.<br><br>CAMOFI MASTER LDC, CAMHZN MASTER,<br>LDC, and CENTRECOURT ASSET<br>MANAGEMENT, LLC,<br><br>       Counterclaim Defendants. | Case No. 14-02049 |

**MEMORANDUM OF LAW IN SUPPORT OF CAMOFI MASTER LDC, CAMHZN MASTER LDC, AND CENTRECOURT ASSET MANAGEMENT, LLC'S MOTION TO REMAND TO NEW YORK STATE COURT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.............................................................................................1

FACTUAL BACKGROUND ..............................................................................................4

    A. The Parties .............................................................................................................4

        1. The CAM Entities ...........................................................................................4

        2. Defendants U.S. Coal and JAD........................................................................4

        3. Defendant East Coast Miner, LLC...................................................................4

    B. The CAM Funds' Investments and Agreements With U.S. Coal and JAD....................4

        1. The April 2008 Letter Agreement ...................................................................4

        2. The Rights Agreement .....................................................................................5

        3. The Equipment Purchase Agreement................................................................6

    C. ECM's Investments in U.S. Coal and JAD ...............................................................6

        1. ECM's Initial Investment In U.S. Coal Debt ...................................................6

    D. The State Court Action..............................................................................................8

    E. The Bankruptcy Proceedings and Removal ...............................................................9

ARGUMENT......................................................................................................................9

    I. Fundamental Principles of Fairness and Efficiency Warrant Remand of The State
       Court Action To Allow the CAM Funds to Proceed With Their State Law Claims
       Against ECM ...........................................................................................................9

    A. The CAM Funds' Causes of Action Against ECM Are Non-Core Claims
       Which Should Not Be Litigated In the Bankruptcy Court............................................9

    B. All Relevant Factors Mandate the Remand of the ECM Claims Back To State
       Court .......................................................................................................................12

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cathedral of the Incarnation in the Diocese of Long Island v. Garden City Co., Inc. (In re Cathedral of the Incarnation in the Diocese of Long Island)*,
99 F.3d 66 (2d Cir. 1996)................................................................................................12

*Digital Satellite Lenders, LLC v. Ferchill*,
2004 WL 1794502 (S.D.N.Y. Aug. 6, 2004)..............................................................11, 12, 13

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*,
130 B.R. 405 (S.D.N.Y. 1991)...................................................................................10, 11, 12

*Farace v. Pereira*,
2004 WL 1638090 (S.D.N.Y. Jul. 22, 2004) ......................................................................12

*ALT Hotel, LLC v. Diamondrock Allerton Owner, LLC (In re Alt Hotel LLC)*
479 B.R. 781 (Bankr. N.D. Ill. 2012) ..................................................................................13

*AEG Liquidation Trust v. Toobro NY LLC (In re Amer. Equities Group, Inc.)*,
460 B.R. 123 (Bankr. S.D.N.Y. 2011)..................................................................................12

*In re Chargit Inc.*,
81 B.R. 243 (Bankr. S.D.N.Y. 1987)..............................................................................10, 13

*In re Comtek Elecs., Inc.*,
23 B.R. 449 (Bankr. S.D.N.Y. 1982)....................................................................................11

*JMB Capital Partners , L.P. v. CRT Capital Group LLC (In re NTL, Inc.)*,
295 B.R. 706 (Bankr. S.D.N.Y. 2003)..................................................................................13

*In re S & S 31 Flavors, Inc.*,
118 B.R. 202 (Bankr. E.D.N.Y. 1990).............................................................................10, 13

*In re Verrazano Holding Corp.*,
86 B.R. 755 (Bankr. E.D.N.Y. 1988)....................................................................................13

*Schumacher v. White*,
429 B.R. 400 (E.D.N.Y. 2010) .....................................................................................10, 11, 13

*Shiboleth v. Yerushalmi*,
412 B.R. 113 (S.D.N.Y. 2009)................................................................................10, 11, 12, 13

**STATUTES**

28 U.S.C.
    § 1334...........................................................................................9, 10
    § 1452...........................................................................................9, 12

Plaintiff-Counterclaim Defendants CAMOFI Master LDC ("CAMOFI") and CAMHZN Master LDC ("CAMHZN," and together with CAMOFI, the "CAM Funds") and Counterclaim Defendant Centrecourt Asset Management, LLC ("Centrecourt," and collectively with the CAM Funds, the "CAM Entities"), by and through their counsel, Akin Gump Strauss Hauer & Feld LLP, for their motion to remand this action to New York state court, respectfully state as follows:

## PRELIMINARY STATEMENT

This motion for remand concerns a dispute between two sets of creditors of affiliated companies recently forced into chapter 11 bankruptcy proceedings in Kentucky. The creditors' dispute pre-dated the Kentucky bankruptcy proceeding by almost two-and-a-half years and exclusively involves claims under New York state law that neither arise under nor depend upon the existence of the bankruptcy proceedings. The State Supreme Court that would receive this case after remand has presided over it since inception and is intimately familiar with the relevant issues and parties. Under established law, this case should be remanded back to state court.

In February 2012, plaintiffs the CAM Funds asserted claims in the State Supreme Court in Manhattan (the "State Court") against defendant East Coast Miner, LLC ("ECM") for tortious interference with contract. In that same litigation (the "State Court Action"), the CAM Funds also asserted claims against defendants U.S. Coal Corp. ("U.S. Coal") and its subsidiary JAD Coal Company, Inc. ("JAD") for breach of certain debt instruments. In June 2014, following the completion of document discovery in the State Court Action, involuntary chapter 11 petitions were filed against U.S. Coal and JAD (collectively, the "Debtors") in federal bankruptcy court in Kentucky, automatically staying the claims against these Debtors in the State Court Action. On June 17, 2014, counsel for the Debtors filed a Notice of Removal of the State Court Action to this Court, presumably with the intent of then transferring venue to federal court in Kentucky.

This matter should be remanded back to the State Court to allow the CAM Funds to prosecute their claims against non-debtor ECM.  As a threshold matter, courts routinely remand inter-creditor disputes back to state courts, particularly when, as here, the dispute pre-dates the debtor's bankruptcy, is a non-core proceeding, and exclusively involves claims under state law. The interests of both equity and efficiency warrant this conclusion.

In considering a motion to remand, district courts will consider a number of relevant factors.  Here, these factors all militate in favor of remanding this case to the State Court.  First, the court will consider the effect of remand on the efficient administration of the bankruptcy estate.  As noted above, the action subject to remand here is a dispute between creditors — ECM and the CAM Funds.  Both of these creditors purport to be owed millions of dollars by U.S. Coal and JAD, but their dispute concerns whether ECM interfered with the CAM Funds' debt instruments with the Debtors, causing the Debtors to fail to make payment.  The Debtors' failure to make required payments under these instruments is not in dispute.  The impact of this matter on the bankruptcy case will therefore likely be negligible.

Second and third, courts will consider whether state law claims predominate and whether the applicable state law is difficult or unsettled.  As stated above, the only claims between ECM and the CAM Funds are state law claims for tortious interference.  The State Court is better positioned to address questions of tortious interference under New York state law than a bankruptcy court in Kentucky.  This is particularly true when the defendant ECM has asserted the economic interest defense and other defenses governed by New York law.

Fourth, comity also weighs in favor of remand to the New York State court.  The State Court here has decided multiple motions to dismiss, resolved numerous discovery disputes, and is intimately familiar with the issues in this case.  In addition, many, if not most, of the essential

parties involved reside in New York, including Centrecourt, the CAM Funds' management

company that is responsible for their day-to-day operation, and Keith Goggin, ECM's managing

member. These factors weigh in favor of deference to the New York courts.

Fifth, the dispute's relation, or lack thereof, to the bankruptcy case also favors remand.

The CAM Funds' claims against ECM relate to the bankruptcy case to the extent that the

managers of ECM are also present or former managers of the Debtors, and the contracts here

involve obligations owed by the Debtors. Nevertheless, ECM is an entity independent from the

Debtors and the breach of the debt instruments at issue here is not in dispute. Indeed, throughout

the State Court Action, ECM has declared its independence from the Debtors and maintains that

the Debtors owe it millions of dollars.

Sixth, the right to trial by jury cuts decidedly in favor of remand. The CAM Funds'

claims are claims at law, and therefore subject to disposition before a jury. A jury will not be

available in the Kentucky bankruptcy case.

Lastly, the seventh factor, prejudice against the involuntarily removed parties, also favors

granting the CAM Funds' motion. The CAM Funds have spent significant time and resources

litigating this matter before the State Court. They have defended motions to dismiss and pushed

the case to the conclusion of document discovery notwithstanding the defendants' recalcitrance.

To force the CAM Funds to now litigate their dispute with ECM before a Kentucky court

unfamiliar with the matter would be the height of unfairness.

The interests of equity mandate that this inter-creditor dispute be decided by the Court

that has presided over it for almost two-and-a-half years. The motion to remand should

accordingly be granted.

## FACTUAL BACKGROUND

### A.      The Parties

#### 1.      The CAM Entities

The CAM Funds are two Cayman Island investment funds.  Centrecourt is a New York-based limited liability company and the investment advisor to the CAM Funds.  The CAM Funds hold equity and debt of U.S. Coal and JAD.

#### 2.      Defendants U.S. Coal and JAD

Defendant U.S. Coal is a Delaware corporation that is the parent holding corporation of numerous subsidiary coal companies in Kentucky and Virginia.  Defendant JAD is a coal company and wholly-owned subsidiary of U.S. Coal.

#### 3.      Defendant East Coast Miner, LLC

Defendant ECM is a Delaware limited liability company.   ECM was created by insiders of U.S. Coal to serve as an investment vehicle to acquire debt and equity interests in U.S. Coal and its subsidiaries.  The debt held by ECM is subordinate to the debt held by the CAM Funds.

### B.      The CAM Funds' Investments and Agreements With U.S. Coal and JAD

Starting in 2007, the CAM Funds acquired a variety of debt and equity securities issued by U.S. Coal and/or its subsidiaries and affiliates.

#### 1.      The April 2008 Letter Agreement

In or about June 2007, the CAM Funds acquired approximately $4.5 million of U.S. Coal Series A Convertible Preferred Stock, as well as warrants to purchase shares of U.S. Coal common stock.  In connection with this acquisition, U.S. Coal and the CAM Funds entered into an agreement providing the CAM Funds with approval over certain proposed U.S. Coal transactions and actions.  This agreement was reaffirmed by a letter agreement entered into in April 2008 (the "April 2008 Letter Agreement").  The April 2008 Letter Agreement provided,

among other things, that U.S. Coal would obtain the CAM Funds' prior written consent before: (1) incurring debt; (2) hiring or terminating executive officers with a salary in excess of $100,000; or (3) entering into transactions with affiliates having a value in excess of $500,000.

U.S. Coal has repeatedly violated this agreement at ECM's behest. For example, in May 2011, without soliciting the CAM Funds' consent, the Board removed then-CEO Robert Gabbard and replaced him with John Collins, a member of ECM. After terminating Gabbard, the Board agreed to pay him $1.2 million. Both of these actions violated the April 2008 Letter Agreement. U.S. Coal further violated the April 2008 Letter Agreement by consummating numerous other transactions without the CAM Funds' consent, as enumerated in the Amended Complaint. (Amended Complaint ¶¶ 44-51, attached as Exhibit 1 to the Declaration of Douglas Rappaport ("Rappaport Dec.").)

> 2.     The Rights Agreement

On April 15, 2008, the CAM Funds, U.S. Coal, and JAD entered into a Securities Purchase Agreement, pursuant to which the CAM Funds purchased a note from JAD, and received 425,000 shares of U.S. Coal common stock. On the same date, U.S. Coal and the CAM Funds entered into a Rights Agreement, which provided the CAM Funds with the conditional right to require U.S. Coal to purchase the CAM Funds' 425,000 shares of U.S. Coal common stock at $5.40 per share. This conditional "put" right would be triggered if U.S. Coal failed by April 1, 2010 to either: (1) sell its common stock through an initial public offering ("IPO"); or (2) execute certain other going-public transactions.

U.S. Coal did not conduct an IPO or other going-public transaction prior to April 1, 2010, or at any time thereafter. On April 6, 2010, the CAM Funds sent a letter to Robert Gabbard, the company's then-CEO, exercising the "put" option on its 425,000 shares of common stock. Despite acknowledging the validity of the Rights Agreements and the CAM Funds' "put" right

on several occasions, U.S. Coal has refused to honor its obligations thereunder, favoring instead its obligations to ECM. (Amended Complaint ¶¶ 37-40.)

### 3. The Equipment Purchase Agreement

Also on April 15, 2008, the CAM Funds, U.S. Coal and JAD entered into an Equipment Purchase Agreement. Under the terms of that agreement, the CAM Funds transferred their interest in certain mining equipment to JAD, and received a JAD Equipment Note as consideration.

The JAD Equipment Note matured in April 2012, and the principal has yet to be repaid. On information and belief, this failure to repay is at ECM's behest. As of the filing of the State Court Action, there was more than $4.2 million in outstanding principal, interest, and late payment fees due on the JAD Equipment Note stemming from U.S. Coal and JAD's multiple breaches. (Amended Complaint ¶¶ 31-33.)

### C. ECM's Investments in U.S. Coal and JAD

### 1. ECM's Initial Investment In U.S. Coal Debt

In or around September 2009, three members of the U.S. Coal Board of Directors, along with certain U.S. Coal officers and shareholders, formed ECM. ECM planned to recapitalize U.S. Coal by purchasing a large amount of its debt at a discount. Such a transaction required the CAM Funds' consent under the April 2008 Letter Agreement and also required the CAM Funds to extend the maturity dates on their then-outstanding stock.

The CAM Funds were concerned that ECM would use its control of the U.S. Coal Board to provide preferential treatment of its debt over the debt of the CAM Funds and other creditors. To allay these concerns, U.S. Coal's managers assured the CAM Funds that U.S. Coal and JAD would pay down outstanding debt pursuant to a "waterfall" formula. Under the prescribed "waterfall," ECM would receive $500,000 in monthly debt amortization payments, and other

creditors, including CAM, would likewise receive a $500,000 monthly distribution on a *pro rata* basis.

After receiving these various assurances from ECM, the CAM Funds consented to the recapitalization. Thus, in September 2009, ECM acquired $24 million of the Company's debt at a significant discount and invested an additional $3 million in the Company's equity (collectively, the "ECM Recapitalization"). The ECM debt was secured by third and fourth priority security interests in certain assets of JAD, as well as a first priority lien on certain assets of Licking River Resources, Inc. — another wholly-owned subsidiary of U.S. Coal. ECM's security interests in JAD are junior to, and expressly subordinated to, CAM's security interests in JAD.

In connection with the ECM Recapitalization, ECM added another two of its members to the U.S. Coal Board of Directors. Thus, at the close of the ECM Recapitalization, all five members of U.S. Coal's Board of Directors were ECM members.

In December 2011, U.S. Coal executed a series of material transactions with insiders and affiliates through ECM without the CAM Funds' consent. These transactions all violated the April 2008 Letter Agreement. (U.S. Coal 2011 Consolidated Financial Statements, Rappaport Dec., Exhibit 2.) These transactions required U.S. Coal to make more than $10 million in additional interest payments to insiders and creditors other than the CAM Funds.

Specifically, U.S. Coal entered into a transaction with ECM whereby U.S. Coal extended the maturity date on over $7.7 million of U.S. Coal secured notes from 2011 to 2014. (*Id.* at 15, 18–19.) As a result, U.S. Coal was scheduled to pay ECM almost $3 million in additional interest.

In addition, U.S. Coal issued a $6,729,423 secured note due in October 2014 to a newly formed insider entity called East Coast Miner II, LLC ("ECM II"). (*Id.* at 20.) The note is secured by substantially all of U.S. Coal's assets and bears interest at 18%, or more than $1.2 million per year. (*Id*. at 15, 19–20, 32.) By maturity, U.S. Coal would have paid ECM II over $3 million of interest on this note.

ECM caused U.S. Coal to enter into these transactions without the consent of the CAM Funds as required by the April 2008 Letter Agreement, and thereby violated that agreement. In doing so, ECM members abused their authority and disregarded their obligations to U.S. Coal. Furthermore, ECM caused U.S. Coal to repeatedly violate the parties' waterfall payment arrangement, causing U.S. Coal to make excess amortization payments on ECM's debt while failing to make required payments to other lenders, including the CAM Funds.

### D.      The State Court Action

On February 14, 2012, the CAM Funds initiated the State Court Action in the Supreme Court of the State of New York, New York County, against ECM, U.S. Coal, JAD, and certain individual officers and directors of U.S. Coal and ECM. The CAM Funds' original complaint in the State Court Action asserted claims for tortious interference against ECM for causing U.S. Coal and JAD to breach the Rights Agreement, the April 2008 Letter Agreement, and the JAD Equipment Note. The complaint also alleged breach of various agreements, including the Rights Agreement and the April 2008 Letter Agreement by U.S. Coal, and breach of the JAD Equipment Note by JAD. On October 9, 2012, the CAM Funds filed an amended complaint, reasserting the claims against ECM for tortious interference, as well as claims against U.S. Coal and JAD for breach of the various contracts. ECM filed an answer, asserting a counterclaim against the CAM Funds, on November 5, 2012. The counterclaim was dismissed on October 15, 2013. U.S. Coal filed an answer to the Amended Complaint on January 23, 2014.

All of the claims in the State Court Action are state law claims.  Document discovery is essentially complete in the State Court Action, and depositions were scheduled to begin the week of the bankruptcy filings.

### E.     The Bankruptcy Proceedings and Removal

On or about May 20, 2014, creditors with no connection to this litigation filed a petition commencing an involuntary bankruptcy case against JAD, which is now pending before the United States Bankruptcy Court for the Eastern District of Kentucky (the "Kentucky Bankruptcy Court").  (Notice of Removal ¶ 1.)  On or about June 10, 2014, creditors with no connection to this litigation filed a petition commencing an involuntary bankruptcy case against U.S. Coal, which is now also pending in the same court.  (Notice of Removal ¶ 2.)  These actions have been consolidated.  On June 17, 2014, the Debtors removed the State Court Action to this Court.

### ARGUMENT

**I.     FUNDAMENTAL PRINCIPLES OF FAIRNESS AND EFFICIENCY WARRANT REMAND OF THE STATE COURT ACTION TO ALLOW THE CAM FUNDS TO PROCEED WITH THEIR STATE LAW CLAIMS AGAINST ECM**

The interests of both equity and efficiency mandate that this case be remanded back to the State Court for adjudication of claims against ECM.  As described below, all relevant factors weigh in favor of remand.

### A.     The CAM Funds' Causes of Action Against ECM Are Non-Core Claims Which Should Not Be Litigated In the Bankruptcy Court

Removal and remand of claims related to bankruptcy actions are governed by 28 U.S.C. § 1452 ("§ 1452").  *See* 28 U.S.C. § 1452 (2014).  Section 1452(a) allows removal to a federal court of a civil action if the court "has jurisdiction of such claim" under 28 U.S.C. § 1334 ("§ 1334"), which addresses bankruptcy cases and proceedings.  *See* 28 U.S.C. § 1334 (2014). Among other things, § 1334 provides that the district courts "shall have original but not

exclusive jurisdiction of all civil proceedings . . . related to cases under title 11" and that district

courts should abstain from hearing cases "commenced in a state forum of appropriate

jurisdiction." 28 U.S.C. § 1334(b) (2014).

Matters that merely "relate[] to cases under title 11" are commonly categorized as "non-

core" proceedings. *See In re Chargit Inc.*, 81 B.R. 243, 246, 247 (Bankr. S.D.N.Y. 1987). In

contrast, "core" proceedings encompass both claims "predicated on a right created by title 11"

and claims that have "no existence outside of the bankruptcy." *Id*. at 247. Bankruptcy courts

generally do not have jurisdiction to hear non-core proceedings unless such proceedings are

"related to" the bankruptcy cases or a core proceeding under title 11. *Schumacher v. White*, 429

B.R. 400, 405 (E.D.N.Y. 2010). "Related to" proceedings are those whose outcome "could

conceivably have any effect on the estate being administered in bankruptcy." *Id*. at 405. Courts

interpret "conceivably have any effect on the administration of the bankruptcy estate" to mean

that the outcome of the action "could alter the debtor's rights, liabilities, options or freedom of

action (either positively or negatively) and to which it in any way impacts upon the handling and

administration of the bankrupt estate." *In re S & S 31 Flavors, Inc.*, 118 B.R. 202, 204 (Bankr.

E.D.N.Y. 1990) (internal citations omitted). A practical definition of "conceivable" must be

"tempered by a measure of reasonableness." *Chargit*, 81 B.R. at 247.

Non-core proceedings include actions which involve the "adjudication of state-created

private rights, such as the right to recover contract damages." *Shiboleth v. Yerushalmi*, 412 B.R.

113, 116 (S.D.N.Y. 2009) (quoting *In re Emergency Beacon Corp.*, 52 B.R. 979, 986 (S.D.N.Y.

1985)). These claims "do not implicate the essence of federal bankruptcy power." *Id*.

(remanding case considering only non-core state law partnership issues); *see also Drexel*

*Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991) (granting

10

motion to remand where only non-core state law declaratory action and breach of contract claims were at issue). It is the burden of the party alleging bankruptcy court jurisdiction to establish the existence of that court's jurisdiction over the matter in dispute. *See Shiboleth*, 412 B.R. at 117.

A bankruptcy court has "no power to entertain collateral disputes between third parties that do not involve the bankrupt or its property, nor may it exercise jurisdiction over a private controversy which does not relate to matters pertaining to bankruptcy." *Schumacher*, 429 B.R. at 406 (internal citations omitted); *see also Digital Satellite Lenders, LLC v. Ferchill*, 2004 WL 1794502, at *6 (S.D.N.Y. Aug. 6, 2004) (in "noncore proceedings . . . the federal courts should not rush to usurp the traditional precincts of the state court") (internal quotations and citations omitted). A debtor's removal of an action "which, in effect, stays a state court action not only against itself but against a non-debtor co-defendant is inequitable." *Schumacher*, 429 B.R. at 406; *see also In re Comtek Elecs., Inc.*, 23 B.R. 449, 451 (Bankr. S.D.N.Y. 1982) (remanding action where removal by debtor, which stayed state law claims against non-debtor guarantor, was "inequitable").

Here, U.S. Coal has removed the entire State Court Action, including the CAM Funds' state law tortious interference claims against non-debtor ECM (the "ECM Claims"). The dispute between the CAM Funds and ECM is, at best, a non-core proceeding. These ECM Claims neither "arise under" or "arise in" title 11, as they are not created by the Bankruptcy Code nor exist only because of the Bankruptcy Code. Moreover, the outcome of the State Court Action will have little or no effect on the administration of the Debtors' estates. Any recovery by the CAM Funds on their tortious interference claims from ECM will not affect the Debtors' rights, liabilities, options or freedom of action. The results of the litigation of the ECM Claims will simply be a shifting of loss from one creditor to another without impact on the estate. As such,

the summary allegation in U.S. Coal's Notice of Removal that this is a core proceeding as to claims against ECM is simply wrong. (Notice of Removal ¶ 9.)

### B. All Relevant Factors Mandate the Remand of the ECM Claims Back To State Court

The relevant factors New York courts will consider all weigh in favor of remanding this case back to the New York Supreme Court.

The remand of claims related to bankruptcy cases is governed by 28 U.S.C. § 1452(b). Section 1452(b) provides that a claim or cause of action may be remanded "on any equitable ground." 28 U.S.C. § 1452(b) (2014). An equitable ground is one that is "fair and reasonable." *Cathedral of the Incarnation in the Diocese of Long Island v. Garden City Co., Inc. (In re Cathedral of the Incarnation in the Diocese of Long Island)*, 99 F.3d 66, 69 (2d Cir. 1996); *Shiboleth,* 412 B.R. at 117; *Digital Satellite Lenders*, 2004 WL 1794502, at *5; *Farace v. Pereira*, 2004 WL 1638090, at *6 (S.D.N.Y. Jul. 22, 2004).

Courts will consider up to seven factors in deciding whether to remand a case. These factors include: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the relatedness or remoteness to the main bankruptcy case; (6) the existence of a right to a trial by jury; and (7) prejudice to the involuntarily removed parties. *See AEG Liquidation Trust v. Toobro NY LLC (In re Amer. Equities Group, Inc.)*, 460 B.R. 123, 128 (Bankr. S.D.N.Y. 2011) (granting motion to remand); *Drexel*, 130 B.R. at 407 (same); *Digital Satellite Lenders*, 2004 WL 1794502, at *5 (same).

These relevant factors confirm that remand is appropriate here. First, allowing this action to proceed against ECM in state court will not interfere with the efficient administration of the bankruptcy case. The matter eligible for remand is a dispute between two creditor constituencies

of U.S. Coal: ECM and the CAM Funds.  These parties have been in litigation since early 2012.

Neither U.S. Coal nor any of its subsidiaries are necessary parties to the litigation.  Courts

regularly remand state law disputes between non-debtor third parties.  *Chargit,*, 81 B.R. at 244

(remanding dispute between creditors which would be a "shifting of liability" from one creditor

to another); *In re Verrazano Holding Corp.*, 86 B.R. 755, 764 (Bankr. E.D.N.Y. 1988)

(remanding breach of contract and other state law claims between non-debtor third parties where

outcome of claims would not alter the debtor's rights or liabilities); *JMB Capital Partners , L.P.*

*v. CRT Capital Group LLC (In re NTL, Inc.)*, 295 B.R. 706, 717 (Bankr. S.D.N.Y. 2003)

(remanding contract enforcement action between non-debtor third parties where state law issues

were "sufficiently distinct from the bankruptcy case"); *Schumacher*, 429 B.R.at  406 (remanding

dispute over guaranty agreement between non-debtor third parties where it was "possible" for the

dispute to be decided without affecting the debtors' estate); *S & S 31 Flavors*, 118 B.R. at 204

(remanding case between non-debtor third parties where "none of the Debtor's property [was] at

risk"); *ALT Hotel, LLC v. Diamondrock Allerton Owner, LLC (In re Alt Hotel LLC)*, 479 B.R.

781, 806 (Bankr. N.D. Ill. 2012) (remanding dispute between creditors where outcome "can have

no effect on the estate").

Like the cases cited above, ECM and the CAM Funds are creditors of the Debtors.   Their

dispute accordingly does not require oversight from the bankruptcy court, as opposed to the State

Court that has overseen the matter for the past two and a half years.

The second and third factors of the analysis also weigh heavily in favor of remand.  The

CAM Funds' claims against ECM are for tortious interference.  Courts have consistently found

that where solely state law claims are in dispute, the proper forum for such disputes is state court.

*See, e.g., Shiboleth*, 412 B.R. at 118 (remanding where "state law issues predominate"); *Digital*

*Satellite Lenders,* 2004 WL 1794502, at \*6 (remanding where action "turn[ed] entirely on questions of New York law"). The State Court is best positioned to understand and apply New York's law on tortious interference, as well as the law relevant to defenses asserted by ECM, such as the economic interest defense.

The fourth factor, comity, also weighs in favor of remand. The dispute at issue here involves New York law for tortious interference. The CAM Funds are two investment funds managed by a New York-based investment manager, Centrecourt. Many, if not most, of the members of ECM likewise reside or work in New York, including Keith Goggin, the managing member. The Supreme Court overseeing the State Court action has presided over the case for well over two years, has heard two sets of motions to dismiss, resolved countless discovery disputes, and shepherded the parties through to the conclusion of document discovery. At this point, New York and the State Court have a substantially greater interest in adjudicating this dispute.

The fifth factor, relatedness to the bankruptcy case, also favors remand. The CAM Funds' claims against ECM are related to the bankruptcy case to the extent that the managers of ECM are also present or former managers of U.S. Coal. Nevertheless, these same managers have maintained throughout the State Court Action that ECM is a separate, independent entity from U.S. Coal and that its actions should be judged accordingly. Throughout the State Court Action, ECM has been represented by separate counsel from U.S. Coal and JAD. Indeed, ECM is adverse to U.S. Coal, claiming U.S. Coal owes it in excess of $4.1 million. (*Interim Order Authorizing Postpetition Use Cash Collateral*, ¶ 7(a), Case No. 14-10201 [ECF No. 133], Rappaport Dec., Exhibit 3.) ECM should not now be permitted to argue that it is closely aligned with U.S. Coal in its bankruptcy.

The sixth factor, the right to a trial by jury, clearly weighs in favor of the CAM Funds. Tortious interference claims are legal claims in New York, rather than claims in equity, and therefore entitle the plaintiff CAM Funds to demand a jury.

The seventh factor, prejudice against involuntarily removed parties, also cuts sharply in favor of the CAM Funds. The CAM Funds have spent extensive resources prosecuting this matter in New York Supreme Court. They have spent countless hours reviewing relevant documents to support their case, defeated ECM's motion to dismiss their claims, and succeeded in having ECM's counterclaim dismissed on a motion to dismiss. To now compel the CAM Funds to hit the reset button on their claims against non-debtor ECM would be the height of inequity. These facts, as well as the other relevant factors, all confirm that this case should be remanded and the CAM Funds should be allowed to proceed against ECM in the State Court.

## CONCLUSION

For the foregoing reasons, the CAM Entities respectfully request that the Court enter an order remanding the ECM Claims back to the Supreme Court of the State of New York, and such other relief as the Court deems just and proper.

Dated: New York, New York
      July 17, 2014

                    AKIN GUMP STRAUSS HAUER & FELD LLP
                     /s/ Rachel E. Albanese
                    Douglas A. Rappaport
                    Robert J. Boller
                    Rachel E. Albanese
                    Mili G. Desai
                    One Bryant Park
                    New York, New York 10036
                    (212) 872-1000
                    (212) 872-1002 (facsimile)

                    *Counsel for CAMOFI Master LDC, CAMHZN Master LDC, and Centrecourt Asset Management, LLC*